JOSEPH T. MAGUIRE *vs.* MASSACHUSETTS BAY TRANSPORTATION AU-THORITY. May 13, 1985. *Arbitration,* Arbitrable question. *Contract,* Collective bargaining contract. *Practice, Civil,* Summary judgment.

The plaintiff, a journeyman electrician, was employed in 1977 by the Massachusetts Bay Transportation Authority (MBTA). He is a member of the International Brotherhood of Electrical Workers, Local 103 (union). As a member of the union, the plaintiff was covered by a collective bargaining agreement between the MBTA and the Building and Construction Trades Council of the Metropolitan District. That agreement required that "[a]ny grievance, dispute or difference arising under the terms of th[e] Agreement . . . shall be subject to a [grievance and arbitration] procedure." The plaintiff brought an action in the Superior Court, contending that after the MBTA improperly placed him on involuntary leave of absence status and rejected his requests made, pursuant to G. L. c. 31, § 46E (as in effect prior to St. 1978, c. 393, § 11¹), for a partial leave of absence, it refused his request

¹General Laws c. 31, § 46E, was recodified in substance by St. 1978, c. 393, § 11, as G. L. c. 31, § 37.

for arbitration. In his complaint he sought an order compelling arbitration pursuant to G. L. c. 150C, § 2(*a*),[2] or, in the alternative, for damages for breach of contract and violation of statutory duties.[3] Both the plaintiff and the MBTA moved for summary judgment. The MBTA in its motion for summary judgment asserted, among other things, that the claims which the plaintiff sought to have arbitrated did not state a controversy as defined in the arbitration portion of the agreement. After a hearing a judge denied the plaintiff's motion and allowed the MBTA's motion, ruling that the plaintiff's claims were not arbitrable. The plaintiff has appealed, and we reverse.

The following facts are taken from the materials submitted to the judge in regard to the motions.[4] The plaintiff was continuously employed as a wireman by the MBTA and its predecessor from October 1, 1956, until January 19, 1977. His duties as a wireman did not include any supervisory authority, or the authority to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward or discipline other employees. In November, 1976, the plaintiff was elected to the Legislature as representative from the Eleventh Middlesex Distrtict, and was sworn in to that office on January 3, 1977. On January 19, 1977, he received a telephone call at his home from a representative of the MBTA informing him that he was being placed on an involuntary leave of absence because of his election to the General Court. At that time his hours were 8:00 A.M. to 4:00 P.M., five days per week, Friday through Tuesday.

The plaintiff, on January 20, 1977, and at other times requested that the MBTA grant him a partial leave of absence pursuant to G. L. c. 31, § 46E. His requests were refused. The plaintiff then invoked the grievance and arbitration procedure set out in the collective bargaining agreement. He filed a grievance with the MBTA in regard to his "involuntary leave of

---

[2] The MBTA in its brief asserts that the plaintiff was unsupported by his union and, therefore, has no right to compel the MBTA to arbitrate a grievance under the collective bargaining agreement. See *Norton* v. *Massachusetts Bay Transp. Authy.*, 369 Mass. 1, 2 (1975). Contrary to the MBTA's assertion, the record clearly shows that the plaintiff was fully supported by his union.

[3] The plaintiff also sought an order enjoining the defendant from refusing to allow him to resume his employment; he has since resumed his former position.

[4] In response to the plaintiff's motion for summary judgment, the MBTA submitted a document entitled "Defendant's Objection to Plaintiff's Motion For Summary Judgment." It was verified and signed by the MBTA's counsel. In its brief, the MBTA labels this document as a "counter-affidavit". It is not an affidavit for the purposes of summary judgment because it "does not appear to have been made of the affiant's own personal knowledge, nor does it appear affirmatively that the affiant would have been competent to testify to any of the critical matters at trial." *Stanton Indus., Inc.* v. *Columbus Mills, Inc.*, 4 Mass. App. Ct. 793, 794 (1976). Also see *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 763 n.12 (1976). Perhaps because the document was not headed "affidavit" and did not have the appearance of one, except for the verification clause, the plantiff's counsel did not move to strike it. We do not know whether the motion judge considered any of the "facts" in arriving at his decision. In any event, any use he made of the document does not change our result.

absence" status and the denial of his requests for a partial leave of absence. Later he filed a request for arbitration. The MBTA refused to select an arbitrator or to submit a joint request to the Board of Conciliation and Arbitration.[5] The plaintiff completed his two-year term and returned to work at his former position in August, 1978.

The MBTA argues that the plaintiff's claims are not a "grievance, dispute or difference arising under the terms of [the] Agreement" because it was required as matter of law to place the plaintiff on an involuntary leave of absence when he was sworn into the office of State representative. It points to G. L. c. 31, § 46E, as then in effect, as support for its contention. The MBTA's argument is without merit. That statute authorized an appointing authority to grant a leave of absence to an office holder for a period of up to fourteen days. After that period, the appointing authority could grant a longer leave of absence, for a period of up to three months, only upon the written request of the employee. Here, the MBTA, without any written request from the plaintiff, placed him on involuntary leave of absence status for the entire period that he served as State representative. We also note that the statute specifically provided that any person holding an elective State office and who was employed on a permanent basis by a public authority could not be suspended from that job as a result of his election. Therefore, contrary to the contentions of the MBTA, there is nothing in G. L. c. 31, § 46E, that reduced the plaintiff's claims to nonarbitrable status, and there does not appear to be anything in G. L. c. 30, § 21, or in G. L. c. 268A, § 4, that would prevent arbitration of these matters.

In sum, we are persuaded that the plaintiff's claims are subject to arbitration under the collective bargaining agreement. Because he has shown that there is no genuine issue as to any material fact, he is entitled to have summary judgment granted. Therefore, we order that the judgment entered for the defendant be reversed and that an order be entered directing the parties to proceed to arbitration.

*So ordered.*

*John P. Flynn* for the plaintiff.
*Ronald G. Busconi* for the defendant.

---

[5] The agreement provided for a three-step process culminating in binding arbitration at step three. That step provided that "[i]f no agreement is reached at Step 2, then the grievance shall be submitted to such arbitrator as may mutually be agreed upon between the parties. If no agreement on the designation of an arbitrator is arrived at within five (5) days after written request to arbitrate is received by the General Manager of the [MBTA] or his representative, then the parties shall jointly apply to the State Board of Conciliation and Arbitration for a list of five arbitrators."